1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH MOHAMED, SR. and SHIRLEY        No.  2:16-cv-01327-JAM-EFB
     MOHAMED (as Trustees of the
12   Joseph Mohamed Sr. and Shirley
     Mohamed Charitable Remainder
13   Unitrust II),                          **ORDER GRANTING DEFENDANTS'**
                                            **MOTION TO DISMISS**
14              Plaintiffs,

15        v.

16   COUNTY OF SACRMENTO, a Public
     Agency; and BRIAN WASHKO
17   (individually and as Chief
     Building Official for the
18   County of Sacramento); and DOES
     1 through 100, inclusive,
19
                Defendants.
20

21        Plaintiffs Joseph Mohamed Sr. and Shirley Mohamed filed this

22   § 1983 action against Brian Washko and the County of Sacramento

23   ("Defendants").  ECF No. 1.  Defendants move to dismiss under

24   Fed. R. Civ. P. 12(b)(6).  ECF No. 5.  Plaintiffs oppose the

25   motion.  ECF No. 7.[1]

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for September 20, 2016.

                                    1

1        I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2        Plaintiffs own eighty acres of land in Sacramento County.

3   Compl. ¶ 10.   They entered into a land sale contract to sell

4   that property to a third party.   Id.   An addendum to the

5   contract stated that Plaintiffs would add to the purchase price

6   any costs spent to improve the land.   Id. ¶ 12.   One improvement

7   involved building a Planned Unit Development ("PUD").   Id. ¶ 13.

8   Plaintiffs named it Alhambra Farms, and the plan included the

9   Alhambra Farms Equestrian Center ("Equestrian Center").   Id.

10       In 2007, Plaintiffs discussed their PUD with the County of

11  Sacramento ("County").   First, Plaintiffs submitted a pre-

12  application meeting request, which included their proposal to

13  build ten homes, a full-size riding arena, horse stables, a

14  caretaker's home, and a private clubhouse.   Id. ¶ 14.   Five to

15  six County departments met with Plaintiffs, including the

16  Sacramento County Planning and Building Inspection Department

17  ("PBI").   Id. ¶ 15.   The Commissioners recommended that

18  Plaintiffs build sixteen homes, each with five acres, and

19  Plaintiffs amended their PUD proposal accordingly.   Id.

20       Plaintiffs wanted their Equestrian Center to include

21  "agricultural exempt" ("ag exempt") buildings.   Sacramento County

22  Code § 16.02.080 governs "ag exempt" building permits.   When

23  Plaintiffs applied for these permits, that Section stated, in

24  relevant part, an "agricultural building" shall qualify for an

25  "exempt building permit" if it is located on land with twenty or

26  more acres used primarily for agricultural uses, and the

27  following conditions are met:

28       A.   An Exempt Building Permit is applied for by the

2

1    property owner or authorized agent.

2    B.   A plot plan is submitted indicating the proposed

3    building and all existing buildings on the subject

4    parcel and showing for each the size, use, and

5    location on the property in relation to property lines

6    and other buildings.

7    C.   The Director of the Planning and Community

8    Development Department determines that the use and

9    location of the proposed building is permitted by the

10   Zoning Code of Sacramento County.

11   D.   The proposed building is not located on a portion

12   of the parcel that requires a minimum floor elevation

13   (not in a flood plain).

14   E.   A processing fee for the Exempt Building Permit

15   is paid by the applicant to cover the required

16   application, the initial site check, the final project

17   inspection (to verify location of project) and

18   maintenance of related Building Inspection records.

19   The fee basis is 4 hours of a Building Inspector II's

20   time at the current hourly billing rate.

21   F.   Unless otherwise exempted by this Code, separate

22   plumbing, electrical, and mechanical permits will be

23   required (if included with the project) for the above

24   exempted items.*

25   *If electrical, mechanical, or plumbing permits are

26   required, floor plans describing the size and use of

27   all rooms shall be submitted.

28   Id.

3

California Building Code § 202 defines an "agricultural building" as "[a] structure designed and constructed to house farm implements, hay, grain, poultry, livestock, or other horticultural products.  This structure shall not be a place of human habitation or a place of employment where agricultural products are processed, treated, or packaged; nor shall it be a place used by the public."  Id. (emphasis added).

Five years after their pre-planning discussions with the County, Plaintiffs submitted applications to PBI to receive "ag exempt" permits to construct the following buildings:

1.   Hay Barn I

2.   Agricultural Barn

3.   Horse Stables

4.   Riding Arena

5.   Hay Barn II

See id. ¶¶ 18, 22.

Then Plaintiffs sent a letter to Roger Fuller, the PBI Inspector, confirming that these five buildings would not involve commercial use.  Id. ¶ 24.  Plaintiffs also submitted their plot plan.  Id. ¶ 21.  On October 15, 2012, the County approved Plaintiffs' plot plan and the "ag exempt" permits for all five buildings (the "Original Five").  Id. ¶¶ 21, 25.

Afterwards, Plaintiffs applied for several permits to add electrical and plumbing services.  Id. ¶ 26.  In addition to adding these services to the Original Five, Plaintiffs requested electrical services for a Restroom Building—a building they did not have a permit to build.  Id. ¶¶ 26, 30.  Nevertheless, the County issued the electrical and plumbing permits for the

4

1  Original Five and the Restroom Building.  Id. ¶¶ 27-30.

2       Soon after, PBI inspectors began conducting final

3  inspections.  They started with Hay Barn I, the Agricultural

4  Barn, and the Riding Arena.  The inspectors raised questions to

5  Brian Washko—Chief Building Official for the County—about whether

6  these were, in fact, "ag exempt" buildings.  Id. ¶¶ 5, 31.  Yet,

7  ultimately, the County approved Hay Barn I, the Agricultural

8  Barn, and the Riding Arena.  Id. ¶ 31.  Then the PBI inspectors

9  focused on Hay Barn II.  After their final inspection, PBI

10  inspectors raised the same questions to Washko, but, again, the

11  County approved Hay Barn II as an "ag exempt" building.  Id.

12  ¶ 32.

13       After the County approved most of the Original Five as "ag

14  exempt" buildings, Plaintiffs turned their attention to the

15  Restroom Building.  First, they submitted an application to

16  install plumbing—even though, still, they did not have a permit

17  to build the restroom itself.  Id. ¶ 34.  Then Plaintiffs met

18  with Washko to discuss permits for the Restroom Building.  Id.

19  ¶ 35.  Plaintiffs told Washko they wanted a permit to build the

20  Restroom Building, and they gave Washko design drawings.  Id.

21  ¶¶ 35-36.  Washko issued an "ag exempt" permit for the Restroom

22  Building and told PBI personnel to add it to the existing permit

23  for the Horse Stables.  Id. ¶ 37.

24       Plaintiffs and Washko also discussed the Equestrian Center.

25  They reviewed issued permits, Plaintiffs' completed work, and the

26  County's inspections.  Id. ¶ 35.  Plaintiffs also informed Washko

27  that they had nearly finished building the Original Five.  See

28  id.

5

1       But, in August 2014, Plaintiffs' Alhambra Farms project came

2  to a halt.  Although PBI inspectors had inspected the nearly

3  complete Horse Stables and Restroom Building, Washko inspected

4  the Equestrian Center and reached a new conclusion.  <u>Id.</u> ¶¶ 39-

5  40.  He sent a letter to Plaintiffs (the "Washko Letter"),

6  revoking permits for the Horse Stables, the Restroom Building,

7  and the Riding Arena because they were intended for public—rather

8  than agricultural—use and so they were not "ag exempt" buildings.

9  <u>Id.</u> ¶¶ 40-41.  The County never conducted final inspections for

10  the Horse Stables or the Restroom Building, and all work on these

11  buildings stopped.  <u>Id.</u> ¶¶ 42-43.  In January 2015, the County

12  issued a "Notice of Violation" and "Stop Work Order" for the

13  Horse Stables, the Restroom Building, and the Riding Arena.  <u>Id.</u>

14  ¶ 44.

15       Plaintiffs initiated the appeals process.  First, they filed

16  an administrative appeal with the Building Board of Appeals

17  ("Board").  <u>Id.</u> ¶ 45.  The Board upheld Washko's decision to

18  revoke the permits for the Horse Stables, the Restroom Building,

19  and the Riding Arena.  <u>Id.</u>  Then Plaintiffs appealed to the

20  Sacramento County Superior Court.  <u>Id.</u> ¶ 46.  The Superior Court

21  affirmed the Board's decision to revoke the "ag exempt" permits

22  for the Horse Stables and the Restroom Building, but reversed the

23  decision to revoke the permit for the Riding Arena.  <u>See</u> Exh. U

24  to Compl., Judgment on Writ of Mandate at 2.  Plaintiffs appealed

25  the Superior Court's decision regarding the Horse Stables and the

26  Restroom Building to the Third District Court of Appeal.  Compl.

27  ¶ 47.

28       Plaintiffs also own two other properties they claim are at

issue here.  The first property is located at Myrtle Avenue

("Myrtle Avenue Property").  Id. ¶ 59.  The lot has a metal

building (the "Garage"), which does not have a permit, though

Plaintiffs allege the seller did not disclose this when they

bought it.  Id.  Plaintiffs discovered the problem when they

applied for a permit to add electrical power to the Garage, but

the County issued a Notice of Violation.  Id.  Plaintiffs paid

the necessary fees and requested a final inspection.  Id.  The

PBI inspector passed the electrical work on one condition:

Plaintiffs had to add slats to a fence.  Id.  The permit,

however, was never finalized because Washko intervened and

directed the PBI staff to not final the permits and to issue more

notices of violation.  Id.  The County maintains that the Garage

is a commercial building, so the entire property must conform to

commercial standards.  Id.

      The second property is a commercial property ("Power Inn

Property").  Id.  Plaintiffs leased this property to A-1

Distributing, Inc. ("A-1").  Id.  After the lease ended, A-1 did

not restore the property to its pre-lease condition.  Id.

Plaintiffs realized that A-1 made physical changes in the

building without obtaining the requisite permits.  Id.

Plaintiffs worked cooperatively with PBI personnel to receive the

necessary permits and made repairs with the understanding that

the County would not fine or penalize them.  Id.  Plaintiffs

completed the corrective work and sought a final release from the

County, but Washko refused to accept the terms previously agreed

to by PBI personnel and Plaintiffs.  Id.  Washko would not issue

final permits or sign off on the property unless Plaintiffs paid

1    fines and penalties.    Id.

2         Plaintiffs sued Washko and the County in federal court under

3    42 U.S.C. § 1983.  Plaintiffs allege that Defendants denied them

4    procedural due process under the Fourteenth Amendment, retaliated

5    against them for engaging in First Amendment activities, denied

6    them equal protection of the law, and committed an

7    unconstitutional taking under the Fifth Amendment.  Defendants

8    move to dismiss.

9

10                        II.   OPINION

11        A.   Section 1983 Claims

12        Section 1983 vindicates federal rights, but does not itself

13   constitute a substantive right.  See Albright v. Oliver, 510

14   U.S. 266, 271 (1994) (internal citation omitted).  To

15   successfully bring a § 1983 claim, a plaintiff must show that "a

16   person acting under color of state law committed the conduct at

17   issue" and "that the conduct deprived the claimant of some

18   right, privilege, or immunity protected by [federal law]."  Leer

19   v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).  Simply put,

20   § 1983 imposes liability for violating constitutional rights,

21   but not for violating duties arising from tort law.  See Baker

22   v. McCollan, 443 U.S. 137, 146 (1979).

23        To allege a § 1983 claim against a city, a plaintiff must

24   allege facts showing that the city had a custom or policy that

25   caused the plaintiff's constitutional injury.  See Monell v.

26   Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A "policy or

27   custom" under Monell is a "longstanding practice...which

28   constitutes the 'standard operating procedure' of the local

                                 8

government entity." Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002) (internal citation omitted). "[T]he complaint must allege the policy, as well as its causal relationship to the constitutional injury, in sufficient detail." Hass v. Sacramento Cnty. Sheriff's Dep't, No. 2:13-cv-01746, 2014 WL 1616440, at *5 (E.D. Cal. Apr. 18, 2014).

B.   Judicial Notice

Defendants ask the Court to take judicial notice of the following:  (1) the Sacramento County Superior Court's Judgment on Writ of Mandate (attached to Defendants' Request for Judicial Notice ["RJN"] as Exh. A); and (2) the Superior Court's Ruling on Submitted Matter (Id.).  RJN at 1-2.  Both documents arise from the state court case.  RJN at 2.

A court may take judicial notice of a fact that is not reasonably disputed if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  On a motion to dismiss, courts may consider "matters of public record."  Northstar Fin. Advisors Inc. v. Schwab Inv., 779 F.3d 1036, 1042 (9th Cir. 2015) (internal citation omitted).  "Matters of public record" include court filings.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of court filings and other matters of public record).

The Court takes judicial notice of the Superior Court's Judgment on Writ of Mandate and its Ruling on Submitted Matter because both constitute matters of public record not subject to reasonable dispute.

1   C.   <u>Analysis</u>

2        1.   <u>Issue Preclusion</u>

3        Defendants argue that issue preclusion bars Plaintiffs'

4   complaint because the Superior Court decided issues identical

5   here.  Mot. at 9-10.  This doctrine "bars successive litigation

6   of an issue of fact or law actually litigated and resolved in a

7   valid court determination essential to the prior judgment, even

8   if the issue recurs in the context of a different claim."  <u>White</u>

9   <u>v. City of Pasadena</u>, 671 F.3d 918, 926 (9th Cir. 2012) (internal

10  citation and quotation marks omitted).  Under 28 U.S.C. § 1738,

11  "a federal court must give to a state-court judgment the same

12  preclusive effect as would be given that judgment under the law

13  of the State in which the judgment was rendered."  <u>Id.</u> (internal

14  citation and quotation marks omitted).

15       To determine preclusive effect, a federal court follows

16  state preclusion rules.  <u>See</u> <u>id.</u>  In California, issue

17  preclusion applies when (1) the issue sought to be precluded

18  from relitigation is identical to the issue decided in the

19  former proceeding; (2) the issue was actually litigated in the

20  former proceeding; (3) the issue was necessarily decided in the

21  former proceeding; (4) that proceeding resulted in a final

22  decision on the merits; (5) the party against whom preclusion is

23  sought is the same as, or in privity with, the party to the

24  former proceeding; and (6) applying issue preclusion would

25  "[preserve] the integrity of the judicial system, [promote]

26  judicial economy, and [protect] litigants from harassment by

27  vexatious litigation."  <u>See</u> <u>Lucido v. Superior Court of</u>

28  <u>Mendocino Cnty.</u>, 795 P.2d 1223, 1225-27 (Cal. 1990).

10

1    Defendants argue that issue preclusion bars this federal

2   suit because the issues decided in Superior Court are identical

3   to those here, the Superior Court issued a final judgment on the

4   merits, and Plaintiffs were a party in the state case.  Mot. at

5   9–12.

6    Plaintiffs disagree for two reasons.  First, there is no

7   final judgment because Plaintiffs appealed the Superior Court

8   decision to the Third District Court of Appeal.  Opp. at 10.

9   Second, the issues raised in Superior Court differ from those

10   here because they involve more constitutional claims.  <u>Id.</u>

11   Defendants do not address either point in their reply brief.

12    The Court agrees with Plaintiffs that issue preclusion does

13   not apply.  First, there is no final judgment because Plaintiffs

14   have a pending appeal.  Compl. ¶ 47; Opp. at 10.  A final

15   judgment exists when "prior adjudication of an issue in another

16   action is...'sufficiently firm' to be accorded preclusive

17   effect."  <u>Border Bus. Park, Inc. v. City of San Diego</u>, 142 Cal.

18   App. 4th 1538, 1564 (2006) (internal citations omitted).  It is

19   well settled under California law that a trial court judgment

20   pending on appeal is not final.  <u>See</u> CAL. CIV. PROC. CODE § 1049

21   (West 2016) ("An action is deemed to be pending from the time of

22   its commencement until its final determination upon appeal, or

23   until the time for appeal has passed, unless the judgment is

24   sooner satisfied.").  <u>See</u> <u>also</u> <u>Border Bus. Park, Inc.</u>,

25   142  Cal.App.4th at 1564 (when assessing whether decision final,

26   consider whether decision subject to appeal).

27    Second, the issues here vary from those raised in Superior

28   Court.  Here, Plaintiffs include facts about their Myrtle Avenue

11

1   and Power Inn Properties.  Compl. ¶ 59.  And Plaintiffs allege

2   more constitutional violations (i.e., the First Amendment, the

3   Equal Protection Clause under the Fourteenth Amendment, and the

4   Fifth Amendment).  Id. ¶¶ 59, 66, 73.  In sum, issue preclusion

5   does not bar Plaintiffs' complaint here.

6          2.   First Cause of Action:  Procedural Due Process
                Under the Fourteenth Amendment
7

8        Plaintiffs bring their first § 1983 claim against all

9   Defendants, alleging that the Washko Letter, the County's

10  subsequent "Notice of Violation" and "Stop Work Order," and the

11  Board's administrative hearing denied them due process under the

12  Fourteenth Amendment.  Compl. ¶¶ 40-45.  Specifically,

13  Plaintiffs challenge Defendants' decision to revoke the "ag

14  exempt" permits for the Horse Stable, the Restroom Building, and

15  the Riding Arena.  Id. ¶ 48.

16      The Fourteenth Amendment provides that "[n]o state

17  shall...deprive any person of life, liberty, or property,

18  without due process of law."  U.S. Const. amend. XIV, § 1.  To

19  state a procedural due process claim, a plaintiff must allege

20  (1) a protectable liberty or property interest, (2) the

21  government deprived him of that interest, and (3) the government

22  denied him adequate procedural protections.  See Foss v. Nat'l

23  Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998)

24  (internal citations omitted).

25       Defendants argue that Plaintiffs have not stated a claim

26  because they have not shown a lack of due process.  Mot. at 14.

27  Plaintiffs say they have because the Washko Letter, the County's

28  subsequent notices, and the administrative hearing all occurred

12

1   without notice and without a reasonable opportunity to be heard

2   at a hearing.  Opp. at 13.   Plaintiffs also allege that the

3   hearing's restrictive time frame prevented them from presenting

4   evidence about the County's pre-application involvement with

5   Alhambra Farms or evidence about the County's zoning

6   restrictions.  Opp. at 13; Compl. ¶ 45.  Defendants maintain

7   that Plaintiffs conceded that the County did not deprive them of

8   a fair hearing when they did not appeal that portion of the

9   Superior Court's decision.  Reply, ECF No. 8, at 2.

10      The Court finds that this claim should be dismissed, but

11  for a different reason than that raised by Defendants.  The

12  threshold question under a Fourteenth Amendment claim is whether

13  the claimant has a protectable property interest.  Bd. of

14  Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  A

15  cognizable property interest is a "legitimate claim of

16  entitlement" resulting from an independent source like federal

17  or state law.  Id.  The Ninth Circuit has held that procedural

18  due process claims based on discretionary decisions related to

19  land use permit applications cannot be maintained.  See Bateson

20  v. Geisse, 857 F.2d 1300, 1305 (9th Cir. 1988) (affirming

21  district court's conclusion that plaintiff did not have

22  legitimate claim of entitlement to approval of his minor plat

23  application).  See also Richter v. City of Des Moines, No. C10-

24  461MJP, 2012 WL 8671871, at *3-4 (W.D. Wash. Mar. 1, 2012)

25  (concluding plaintiff lacked protectable property interest in

26  proposed trail construction project because City had discretion

27  whether to grant permit and plaintiff had not shown any local or

28  state law entitling her to permit).

1    Defendants cited California Building Code § 105.6 as

2  grounds for revoking Plaintiffs' "ag exempt" permits for the

3  Horse Stables, the Restroom Building, and the Riding Arena.

4  That Section provides:

5        The Building Official <u>may</u>, in writing, suspend or
         revoke a permit issued under the provisions of this
6        Code, or other relevant laws, ordinances, rules, or
         regulations, whenever the permit is issued in error or
7        on the basis of incorrect, inaccurate, or incomplete
         information, or in violation of any ordinance or
8        regulation of any of the provisions of this Code.

9  <u>Id.</u> (emphasis added).

10   Plaintiffs have no protectable property interest in the

11 revoked permits.  Section 105.6 uses discretionary language and

12 gives Washko, as Chief Building Official, discretion whether to

13 revoke a permit.  Equally important, Plaintiffs have not shown

14 any local or state law entitling them to these permits.  Because

15 <u>Bateson</u> squarely forecloses Plaintiffs' procedural due process

16 claim, this Court grants Defendants' motion to dismiss the First

17 Cause of Action.

18   Dismissal under Rule 12(b)(6) with prejudice and without

19 leave to amend is appropriate "only if it appears beyond doubt

20 that the plaintiff can prove no set of facts in support of his

21 claim which would entitle him to relief."  <u>Navarro v. Block</u>, 250

22 F.3d 729, 732 (9th Cir. 2001) (citations and internal quotation

23 marks omitted).  The Superior Court held that the County

24 improperly revoked Plaintiffs' permit for the Riding Arena, but

25 it did not address whether Plaintiffs acquired a fundamental

26 vested right in that revoked permit.  <u>See</u> Exh. U to Compl.,

27 Ruling on Submitted Matter at 9.  So, it is possible Plaintiffs

28 can prove facts supporting their procedural due process claim as

14

1   to the revoked permit for the Riding Arena.  The Court therefore

2   dismisses the First Cause of Action with leave to amend.

3           3.   Second Cause of Action:  Retaliation in Violation
                 of the First Amendment
4

5       Plaintiffs bring a second § 1983 claim against all

6   Defendants, alleging that Defendants unfairly penalized them in

7   "retaliation for, and to inhibit, the exercise of protected

8   First Amendment activities."  Compl. ¶ 59.  Specifically,

9   Plaintiffs claim Washko acted under County policy or custom when

10  he engaged in retaliatory activities and ratified this treatment

11  on the Myrtle Avenue and Power Inn Properties.  Id.

12      To state a First Amendment retaliation claim, a plaintiff

13  must allege that (1) he engaged in a constitutionally protected

14  activity, (2) defendant's conduct would chill a person of

15  ordinary firmness from future constitutionally protected

16  activity, and (3) defendant's desire to chill plaintiff's speech

17  was a but-for cause of their allegedly unlawful conduct.  See

18  Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013).

19      Defendants argue that Plaintiffs' claim must be dismissed

20  because they only pled deprivations for which the County

21  provided due process.  Mot. at 14-15.  They also note that

22  issues related to the Myrtle Avenue and Power Inn Properties are

23  unripe because Plaintiffs never appealed those claims to the

24  County and, so, Plaintiffs have not satisfied the final decision

25  requirement.  Id. at 12.  And, finally, Defendants contend that

26  the County issued the Notice of Violation and other penalties

27  before Plaintiffs appealed the revoked permits.  Id. at 15

28  (emphasis added).

1      Conversely, Plaintiffs maintain that they have properly

2  stated a claim.  First, they emphasize that Defendants

3  misconstrued their complaint:  Plaintiffs included the Myrtle

4  Avenue and Power Inn Properties to support their retaliation

5  claim.  Opp. at 11.  Second, Plaintiffs explain that there

6  exists a sufficient factual connection between these properties

7  and the Equestrian Center because (1) Washko's refusal to issue

8  a permit for the Myrtle Avenue Property came one month <u>after</u> he

9  inspected the Equestrian Center; and (2) Washko's refusal to

10  issue a permit for the Power Inn Property came nearly 1.5 years

11  <u>after</u> the Washko Letter.  <u>Id.</u> at 15 (emphasis added).  In their

12  reply brief, Defendants contend that they "[did] not address

13  every argument made by Plaintiffs in their Opposition because

14  they either do not make sense legally, or they were sufficiently

15  addressed in the underlying motion."  Reply at 4.

16      Both parties appear not to have addressed the dispositive

17  issue.  The threshold inquiry for a First Amendment retaliation

18  claim involves assessing whether the claimant has engaged in a

19  constitutionally protected activity.  <u>See</u> <u>Ford</u>, 706 F.3d at

20  1193.  But, here, Plaintiffs have not identified the activities

21  they claim the First Amendment protects.  They simply allege

22  that Defendants violated their civil rights "by penalizing

23  [them] unfairly in retaliation for, and to inhibit, the exercise

24  of protected First Amendment activities."  This conclusory

25  allegation cannot survive Rule 8's pleading standard.  <u>See</u> <u>Bell</u>

26  <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (holding that,

27  to avoid dismissal, plaintiff must allege "enough facts to state

28  a claim to relief that is plausible on its face").  This Court

16

1    dismisses this cause of action with leave to amend.

2              4.   Third Cause of Action:  Equal Protection Under
                    the Fourteenth Amendment
3

4        Plaintiffs bring a third § 1983 claim against all

5    Defendants, alleging that Defendants denied them equal

6    protection of the law when Defendants imposed conditions on them

7    they did not impose on persons similarly situated.  Compl. ¶ 66.

8    Plaintiffs also allege that Defendants acted under County policy

9    or custom to ratify this disparate treatment.   Id.

10       The Fourteenth Amendment provides that "[n]o state shall...

11   deny to any person within its jurisdiction the equal protection

12   of the laws."  U.S. Const. amend. XIV, § 1.  "[T]he purpose of

13   the equal protection clause of the Fourteenth Amendment is to

14   secure every person...against intentional and arbitrary

15   discrimination, whether occasioned by express terms of a statute

16   or by its improper execution through duly constituted agents."

17   Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)

18   (internal citation and quotation marks omitted).  Where, as

19   here, state action does not implicate a fundamental right or a

20   suspect classification, a claimant successfully brings a "class

21   of one" equal protection claim when he "alleges that [he] has

22   been intentionally treated differently from others similarly

23   situated and that there is no rational basis for the difference

24   in treatment."   Id.

25       The parties dispute whether Plaintiffs have successfully

26   stated a "class of one" claim.  Defendants say that Plaintiffs

27   have not because (i) they do not identify a similarly situated

28   class or disparate treatment and (ii) they provide no factual

                                 17

1   support.  Mot. at 14.   Conversely, Plaintiffs reiterate that

2   Washko arbitrarily and unilaterally established different

3   conditions for them.  Opp. at 12.  Plaintiffs also emphasize

4   that when a plaintiff brings an equal protection claim based on

5   selective enforcement of valid laws, that plaintiff can show

6   that the defendant's rational basis is pretext for an

7   impermissible motive.  Id. at 13.  Defendants repeat that they

8   "[did] not address every argument made by Plaintiffs in their

9   Opposition because they either do not make sense legally, or

10  they were sufficiently addressed in the underlying motion."

11  Reply at 4.

12      The Court agrees with Defendants.  Plaintiffs have not

13  stated a "class of one" equal protection claim because they

14  neither identify persons similarly situated nor show any

15  disparate treatment.  See Olech, 528 U.S. at 563-65 (concluding

16  plaintiffs successfully stated "class of one" claim after

17  alleging Village required 33-ft easement for plaintiffs but 15-

18  ft easements for similarly situated property owners).  See also

19  RUI One Corp. v. City of Berkeley, 371 F.3d 1137, 1156 (9th Cir.

20  2004) (alleging City treated larger Marina businesses

21  differently from their competitors outside the Marina).  The

22  Court dismisses with leave to amend the Third Cause of Action

23  against all Defendants.

24

25          5.    Fourth Cause of Action:  Takings Under the Fifth
                  Amendment

26

27      Plaintiffs bring their final § 1983 claim against all

28  Defendants, alleging that revoking the permits and Washko's

18

1   interference with the understanding between PBI personnel and

2   Plaintiffs constituted unconstitutional takings.  Compl. ¶ 73.

3   Plaintiffs also allege that Defendants engaged in this conduct

4   under County policy or custom that directed Defendants to

5   unjustly implement the County Code.  See id.

6       For a takings claim to be ripe for review, the claimant must

7   satisfy two requirements:  the final decision requirement and the

8   compensation element.  See Dodd v. Hood River Cnty., 59 F.3d 852,

9   858 (9th Cir. 1995).  The Ninth Circuit has instructed lower

10  Courts to decline to rule on takings claims when the facts show

11  that the property owner has not received a final and definitive

12  decision from a land use regulatory body.  See id.  Local

13  decision-makers must be given an opportunity for review before a

14  court considers ripe an as-applied challenge to a land use

15  regulation.  See id.

16      A state agency's final decision triggers the second ripeness

17  requirement—the compensation element.  A federal court lacks

18  jurisdiction to consider an as-applied takings claim until the

19  state denies "just compensation."  See id.  "No constitutional

20  violation occurs until just compensation has been denied."  Id.

21  at 859 (internal citation and quotation marks omitted).  A

22  plaintiff satisfies this element if he pursued remedies available

23  under state law.  See id. at 860.

24      Defendants make two arguments in support of their motion to

25  dismiss Plaintiffs' claim.  First, Defendants argue that the

26  takings claim is unripe for review because Plaintiffs never

27  sought compensation from the County.  Mot. at 13.  Second, even

28  if the claim is ripe, Plaintiffs' "diminution in value" claim

1  fails because they cannot show that the regulation prohibits all

2  economically beneficial use of land since Plaintiffs concede that

3  these buildings are not commercial properties.  Id.

4       Plaintiffs, on the other hand, contend that their claim is

5  ripe and they have stated a claim because they are seeking

6  compensation now.  Opp. at 12 (emphasis added).  And Plaintiffs

7  maintain that they have stated a claim because the way Defendants

8  enforced the Sacramento County Code deprived them of all

9  economically beneficial use of property.  Id. at 11.  Plaintiffs

10 add that "[f]or the County to prevail, proving that the buildings

11 have value, the County would have to change the zoning of the

12 property."  Id. at 12.

13      Defendants repeat in their reply that they "[did] not

14 address every argument made by Plaintiffs in their Opposition

15 because they either do not make sense legally, or they were

16 sufficiently addressed in the underlying motion."  Reply at 4.

17      The Court agrees with Defendants.  Plaintiffs' takings claim

18 is unripe for review.  As to the revoked permits, Plaintiffs say

19 nothing in their complaint about having sought compensation from

20 the County.  And their statement that the County denied them

21 compensation, Opp. at 12, does not save them.  A court evaluates

22 a complaint based on its allegations, not new facts or claims

23 raised in a Rule 12(b)(6) opposition brief.  See Arres v. City of

24 Fresno, No. CV F 10-1628, 2011 WL 284971, at *18 (E.D. Cal. Jan.

25 26, 2011) (emphasizing that allegations in opposition papers "are

26 irrelevant for Rule 12(b)(6) purposes").  With respect to the

27 Myrtle Avenue Property, Plaintiffs have not satisfied the final

28 decision requirement because they never raised this issue with a

1   land use regulatory body.   See Dodd, 59 F.3d at 858 (concluding

2   final decision requirement met when Planning Director, County

3   Planning Commission, and the Board of County Commissioners

4   reviewed petition).   Because Plaintiffs' takings claim is unripe

5   for review, this Court dismisses with leave to amend the Fourth

6   Cause of Action against all Defendants.

7

8                          III.   ORDER

9        For the reasons set forth above, the Court GRANTS WITH LEAVE

10  TO AMEND Defendants' Motion to Dismiss.   If Plaintiffs elect to

11  submit a First Amended Complaint, they shall file it within

12  twenty days of the date of this Order.   Defendants shall file

13  their responsive pleadings within twenty days thereafter.

14       IT IS SO ORDERED.

15  Dated: November 7, 2016

16

17                                  JOHN A. MENDEZ,
                                    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28